ALEXANDER JACKSON v. ROBERT BUCHANAN.

*Clerk of Superior Court, powers of the deputy of—Ministerial and judicial acts.*

The deputy of the clerk of the superior court is authorized to take the affidavit of the plaintiff and to order the seizure of personal property in an action of claim and delivery. Ministerial and judicial acts distinguished.

(*State* v. *Sneed,* 84 N. C., 816, cited and approved).

APPEAL from an order made at Fall Term, 1882, of RICH-MOND Superior Court, by *Gilmer, J.*

This was an action of claim and delivery, and the plaintiff, on the day of suing out his summons, made the affidavit required by section 177 of the Code of Civil Procedure before an acting deputy of the clerk of the superior court of Richmond county, who endorsed thereon an order directed to the sheriff requiring him to take possession of the property described in the affidavit and deliver it to the plaintiff. The seizure was made and the cotton, the property claimed, redelivered to the defendant on his entering into bond under the provisions of section 181.

At fall term, to which the summons was returnable, the court adjudged "that the order of seizure issued by the deputy clerk of Richmond county on the 25th October, 1882, be vacated and dismissed," and from this ruling the plaintiff appeals.

*Messrs. McNeill & McNeill* and *J. D. Shaw*, for plaintiff.

*Messrs. French & Norment* and *Rowland & McLean*, for defendant.

SMITH, C. J. While no case accompanies the record and there is no specific assignment of error in the transcript, nor the grounds for the vacating of the order given, we are restricted to an examination of the judgment itself and an inquiry into its correctness.

But a single point is presented in the appeal (and to this the argument before us was directed) to-wit, the character of the act, whether judicial or ministerial. If the former, the authority conferred upon the clerk to issue the order is personal to the office and incapable of delegation to another; if the latter, the deputy was as competent as the principal, acting in his name, to issue the mandate and warrant the seizure.

It is true that a preceding examination of the sufficiency of the affidavit is required, and this in some degree involves the exercise of judgment, yet it is only so far as to see that the

requirements of the statute are complied with, and these are explicit in terms. This being ascertained, it is made the positive duty of the clerk to endorse the mandatory order on the affidavit, and no discretion in the premises is reposed in him. §178. When delivered to the officer, he must demand a written undertaking with sureties and approve of that tendered, exercising functions thereby of the same nature as those exercised by the clerk before awarding the process, before proceeding to execute the command. In issuing the order, the clerk does not represent the court, whose officer he is, and as in numerous cases he is authorized to do, under the statute, but he performs a ministerial act, peremptorily enjoined, and exercises a function belonging to the office.

"*The clerk of the court shall, thereupon, by an indorsement in writing upon the affidavit, require the sheriff* of the county, where the property claimed may be, to take the same," &c. C. C. P., §178.

The language is different where an arrest is to be made, and such order "must be obtained from the court in which the action is brought or from a judge thereof." §150.

Where an attachment is sought against property, the warrant may be issued by a judge or by a clerk, §199; and an injunction can only be obtained from a judge in accordance with whose order the clerk issues the writ. §188.

These variations in the phraseology of the statute clearly show that the order of seizure, in an action for the claim and delivery of personal property, is but the issue of subsidiary process by the clerk acting in his official capacity, as such, and in its character ministerial only.

But the right of these officers to confer authority upon others, to act in their name in the performance of ministerial services, existing at common law, has long been recognized by statute.

They may appoint deputies, and these are required to take the same oaths before entering upon their duties which are required of their principals: the clerks are compelled by "*themselves or their*

*lawful deputies*" to have offices at the court-house or other place designated by the county commissioners at the county-seat, for a prescribed time every week open to such as have business with them. Rev. Code, ch. 19, §15; C. C. P., §141.

Moreover under the former law the deputy continued, upon the death of the incumbent principal, to perform all the duties appertaining to the office until his successor is appointed. Rev. Code, §15, *supra.*

These statutory provisions for the convenience of the public evidently contemplate a full substitution of the deputy in place of the principal, and his investiture with all the ministerial functions that belong to the office. These provisions are most of them embodied in THE CODE, which has just gone into operation, sections 74, 75 and 80, and indicate a purpose to vest in the deputy the same authority possessed by the principal to issue the ancillary remedial process in aid of the action, to which the plaintiff is entitled of course upon his application and compliance with the prescribed conditions. Its issue is positively demanded and no discretion to withhold given; and hence it is essentially the performance of a ministerial duty only.

The administration of justice between suitors, forced to seek redress by action in counties where the business of the clerk's office is large and onerous, if the authority of the deputy is restricted, as contended, might be seriously obstructed to the public detriment and the delay of the remedy sought and given by the statute. The enactments do not indicate such to be the legislative intent in the words which are used to express that intent.

In a recent case, this court has held that the examination of a person accused of crime not within the jurisdiction of a justice of the peace, with a view of determining whether he shall be bound over for trial in a court having cognizance, was a *ministerial* and not a judicial act. *State* v. *Sneed,* 84 N. C., 816. And if so, the issuing the order for seizure now before us was equally a ministerial duty.

Our own researches and those of counsel have led to the discovery of no adjudicated cases in which the character of such an act has been before the court, and the conclusion to which our reflections lead is, that the issuing of the order was not such an exercise of judicial power as, under the law, could only be performed by the clerk in person.

The judgment vacating the order is declared erroneous, and is reversed. Let this be certified.

Error.                                                            Reversed.