**James Richard GOODWIN, Jr. and the State of North Carolina, ex rel. James Richard Goodwin, Jr., Plaintiffs,**

v.

**Dale FURR, Sheriff of Richmond, Deputy Sheriff Brian Thorpe and Deputy Sheriff Larry Harrelson individually and in his official capacity, the County of Richmond, and Western Surety Company as surety, Defendants.**

**No. 1:97CV01309.**

United States District Court, M.D. North Carolina.

Oct. 29, 1998.

lack of jurisdiction over the person, and insufficiency of process. Richmond County claims that it is not a proper party to the action, while the deputies contend that no valid service has been made on them.

### Facts and Procedural History

The following is a brief summary of the facts and procedural history of this case. Because these facts relate only tangentially to the motions to dismiss, a more detailed summary is not necessary at this point.

Plaintiff James Goodwin filed a complaint in Richmond County Superior Court alleging that two of his vehicles had been seized by the Richmond County Sheriff's Department. According to the complaint, these seizures were illegal, violated Goodwin's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and consequently violated 42 U.S.C. § 1983. The complaint also alleged that the actions violated the Law of the Land Clause of the North Carolina Constitution, Article I, Section 19. Plaintiff made a claim upon the Sheriff's official bond under N.C. Gen.Stat. § 58–76–5 and joined the surety. He asserted a claim against the County upon its bond under N.C. Gen.Stat. § 153A–435, but it is not clear that the surety was joined as a party. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1443, and 1446.

The complaint names the County as a defendant because it has allegedly established a custom which allows illegal property seizures, such as this one, to occur and because it has not taken measures to control the Sheriff's Department. As for the deputies, the complaint states that they were directly involved in one of the illegal seizures.

Henry T. Drake, Wadesboro, NC, J. Bryan Plumlee, Henry T. Drake & Associates, Wadesboro, NC, for Plaintiffs.

W. Clark Goodman, Womble Carlyle Sandridge & Rice, Charlotte, NC, for Defendants.

### MEMORANDUM OPINION AND ORDER

ELIASON, United States Magistrate Judge.

This case comes before the Court on a motion to dismiss by defendant Richmond County (hereinafter the County), pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Richmond County Deputy Sheriffs Brian Thorpe and Larry Harrelson seek dismissal, pursuant to Fed.R.Civ.P. 12(b)(2), and (5), for

### I.

### Richmond County

Only Richmond County seeks dismissal pursuant to Rule 12(b)(6) for failure to state a claim.[1] The County's argument is a simple

---

1. In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must consider all factual allegations in the complaint to be true. The motion cannot succeed

" 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Republican Party of North Carolina v. Martin,* 980

one. The complaint states that all seizures of plaintiff's property were carried out by the Richmond County Sheriff's Department or its deputies or agents. The County asserts that the Sheriff and his deputies are completely separate from the County and that the County cannot hire, fire, supervise, control, or direct the actions of the Sheriff or his employees. Accordingly, the County claims that, as a matter of law, it cannot be liable for any allegedly illegal seizures performed by the Sheriff or his officers. Plaintiff challenges the County's claim of independence from the Sheriff's Department by pointing out that the complaint alleges that the County has purchased liability insurance which covers "armed employees who deal directly with the public and exercise general powers of arrest." (Complaint at ¶ 9)

### A. State Law Claims

■ The question of whether the County is responsible for the acts of the Sheriff, not unsurprisingly, most often arises as a result of some controversy involving a deputy sheriff. Chief Justice Stacy found that decisions determining the status of a deputy sheriff did not always appear consistent. He reasoned that the factual context and specific issue may make some rationales less widely applicable than others. As he phrased it in this droll little metaphor:

> Instead of controlling precedents, forsooth some are found to be only inns for the night, good enough for the time and purpose, but the law, like the traveler, was up and moving on the morrow.

*Styers v. Forsyth County*, 212 N.C. 558, 194 S.E. 305, 307 (1937). In *Styers*, the court determined that a fee deputy appointed by the sheriff was not a county employee. Later, in *Clark v. Burke County*, 117 N.C.App. 85, 450 S.E.2d 747 (1994), it was held that neither the sheriff nor deputies were employ-

ees of the county. The sheriff was said to be an independently elected official[2] and the deputies were his employees. Therefore, a county is not liable for the acts of the sheriff and deputies. *Id.* (high speed chase). This decision by the North Carolina Court of Appeals is consistent with the earlier North Carolina Supreme Court ruling that a county which erected and maintained a jail was not liable for injuries to inmates under the sheriff's control. *State ex rel. Hayes v. Billings*, 240 N.C. 78, 81 S.E.2d 150 (1954)(refusing to extend municipalities liability for persons in its jails to include counties).

Plaintiff argues for an exception to these decisions holding that a county is not responsible for the acts of the sheriff or deputies based on the fact that Richmond County supplies liability insurance coverage for sheriff's officers and because plaintiff's complaint alleges intentional conduct. The Court does not believe that the North Carolina courts would recognize those facts as creating an exception. With respect to liability insurance, plaintiff fails to explain why this would convert the Sheriff into a County employee or otherwise make the County liable for the Sheriff's acts. The gratuitous act of providing liability insurance does not give a County any more right to control a sheriff or deputy under North Carolina law.

A review of the origin and purpose of local governmental liability policies fails to support plaintiff's claim. Without any liability policy, the state doctrine of governmental or sovereign immunity bars actions against the State, its counties, and public officials sued in their official capacity for acts in the performance of a governmental function. *Messick v. Catawba County, North Carolina*, 110 N.C.App. 707, 431 S.E.2d 489, 493–94, *rev. denied*, 334 N.C. 621, 435 S.E.2d 336 (1993). It covers both intentional and negligent acts.[3] *Dick-*

---

F.2d 943, 952 (4th Cir.1992), *cert. denied*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *quoting, Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**2.** The sheriff, although established by the state constitution, is a local officer, not a state officer. *Hull v. Oldham*, 104 N.C.App. 29, 407 S.E.2d 611, *rev. denied*, 330 N.C. 441, 412 S.E.2d 72 (1991).

**3.** It is clear that intentional acts are not an exception to governmental immunity. Plaintiff may have confused this situation with a suit against the public official as an individual, as opposed to in his official capacity, which is, in effect, a suit against the government.

In North Carolina, government employees are classified as either public officers or public employees for purposes of holding them responsible to third parties for their actions. *Meyer v. Walls,*

ens v. Thorne, 110 N.C.App. 39, 429 S.E.2d 176 (1993). This immunity may be waived through the purchase of liability insurance. Messick, 110 N.C.App. at 714, 431 S.E.2d at 493–494. But the surety must be joined as a party. Id. Governmental immunity does not bar an action brought against the sheriff or deputies. Id.

A county may waive governmental immunity in accordance with the provisions of N.C. Gen.Stat. § 153A–435. The statute permits the county to insure its officers, agents or employees against negligent or intentional damages to person and property. The board of commissioners determines what, who, and the amount to be covered.[4] Although the sheriff is not a county employee, the commissioners may even include the sheriff in the county's liability policy. Smith v. Phillips, 117 N.C.App. 378, 451 S.E.2d 309 (1994). Should that occur, a plaintiff may pursue recovery for tortious actions of the sheriff or his deputies against both the sheriff's bond pursuant to N.C. Gen.Stat. § 58–76–5 and under the county's liability policy pursuant to N.C. Gen.Stat. § 153A–435. Id. In that instance, the county is not a necessary party to this action. Id. Apparently, the county's purchasing of liability insurance for the sheriff is not viewed as a waiver of its own governmental immunity, but of the sheriff's official immunity. See n. 3, supra. Consequently, there is no reason to believe that the legislature, by enacting Section 153A–435, sought to alter the prior law that the county is not liable for the actions of the sheriff.[5] See Braswell v. Ellis, 950 F.Supp. 145 (E.D.N.C. 1995), rev'd on other grounds, 139 F.3d 888 (1998)(unpub.).

For the above reasons, the Court finds that the inclusion of the Sheriff in the County's liability policy does not serve to make the County liable for the Sheriff's actions or a proper or necessary defendant. Therefore, the County may be dismissed as a defendant as to the state law claim.

### B. Federal Claims

■ The County may also be dismissed as to the federal claims because the complaint fails to state a factual basis for a claim against the County. A review of the general factual allegations shows that only the Sheriff and his agents were alleged to have taken unconstitutional action. The County's only involvement is the allegation that it failed to correct the unconstitutional practice of the Sheriff and that this inaction resulted in a custom of tolerating illegal seizures. Howev-

---

347 N.C. 97, 110–114, 489 S.E.2d 880, 887–889 (1997); Messick v. Catawba County, North Carolina, 110 N.C.App. 707, 717–718, 431 S.E.2d 489, 496, rev. denied, 334 N.C. 621, 435 S.E.2d 336 (1993). A public officer is one whose position is created by the state constitution or statutes and who exercises some part of the sovereign power through discretionary acts. The public employee has no immunity, but the public officer is immune from liability in his or her individual capacity for negligent acts pertaining to discretionary duties. This immunity is termed "official immunity" and is to be distinguished from governmental or sovereign immunity. Id. Official immunity does not shield the "public officer" from liability for intentional acts. Epps v. Duke University, Inc., 122 N.C.App. 198, 204, 468 S.E.2d 846, 851, rev. denied, 344 N.C. 436, 476 S.E.2d 115 (1996).

4. § 153A–435 Liability insurance; damage suits against a county involving governmental functions.

(a) A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damages to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment. The board of commissioners shall determine what liabilities and what officers, agents, and employees shall be covered by any insurance purchased pursuant to this subsection.

5. Even if the statute were construed as plaintiff urges, he would not be any better off. Now, a plaintiff can pursue the county's liability policy to the extent it has included the sheriff in its liability policy. It is true that the county must take extra efforts to name the sheriff. However, even if the sheriff were considered to be an employee or agent of the county as plaintiff urges, this would not guarantee that a plaintiff could reach the county's liability policy. The county could still avoid liability by specifically excluding coverage of the sheriff. Under North Carolina law, the county has control over the extent to which it permits recovery under its liability policy. That is the crucial inquiry in determining liability coverage under the county's policy for the tortious actions of sheriffs and deputies, not whether the sheriff and deputies are deemed employees of the county.

er, nowhere does the complaint indicate that the County in some way had notice of these illegal seizures. Nor does it indicate that the County had a right to exercise control over the Sheriff.

The test under federal law is whether the Sheriff and deputies in this case were representing the official policy of the County through their actions. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Municipal liability can arise in this instance if (1) the acts were officially sanctioned or ordered (2) by officials with final policymaking authority in that area or as determined by state law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

A review of two recent Fourth Circuit cases will help focus the inquiry for this case. In one case, the defendant county was held not to be liable for its sheriff's employment decisions. *Harter v. Vernon,* 953 F.Supp. 685, 693–694 (M.D.N.C.), *aff'd,* 101 F.3d 334 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). There the North Carolina statutes gave sheriffs the sole policymaking authority on employment decisions. *Harter* at 693. The county's board of commissioners had "minimal input into employment matters." *Id.* Contrasting the situation in *Harter* is the case of *Dotson v. Chester,* 937 F.2d 920 (4th Cir.1991). In *Dotson,* the Fourth Circuit found a Maryland county liable for the sheriff's actions in running a jail. Its basis for this holding was that under Maryland law, the county had the authority to establish, maintain, and regulate the jail, which it did. *Id.* at 929–930. The county delegated its authority over the jail to the sheriff and made him their final policymaker. *Id.*

In the instant case, plaintiff's complaint is deficient because it never alleges that the County officially sanctioned or ordered the seizure. It never identifies (1) what "illegal custom" compelled, much less allowed sei-zure, (2) any county official who was involved in the seizure, and (3) why the sheriff or deputies may be considered the county's final policymaker with respect to the seized vehicles. The complaint merely states that the County failed to correct unconstitutional practices of the Sheriff and as a result created a custom of illegal practices. Unlike the situation in *Dotson v. Chester,* 937 F.2d 920, plaintiff makes no claim that under North Carolina law, the County had either a right or obligation to fund, maintain or operate the seizure program and that it appointed the sheriff to carry out the program. For this reason, the County is not a proper defendant with respect to the Sheriff's actions in this case under federal law or state law, and the County shall be dismissed as a defendant.

## II.

### The Deputy Sheriffs

██ Defendants Thorpe and Harrelson seek dismissal alleging they were not properly served with a complaint and summons. They contend that they were served by a fellow deputy sheriff, while North Carolina law required that they be served by either the county coroner or the clerk of court.

Because the suit was initially filed in state court and the deputies were served under state law, the parties agree that North Carolina law controls the sufficiency of process in this case. *See generally* 14C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3738 (3d ed.1997). Rule 4 of the North Carolina Rules of Civil Procedure requires that a complaint and summons be served by either the sheriff of the county where service is to be made or another person duly authorized to serve the summons. However, N.C. Gen. Stat. § 162–16 provides that when the sheriff is a party to an action, the process must be served by the coroner of the county or, if there is no coroner, by the clerk of court or someone designated by the clerk of court.[6]

---

6. § 162–16 Execute summons, order or judgment.

Whenever the sheriff may be required to serve or execute any summons, order or judgment, or to do any other act, he shall be bound to do so in like manner as upon process issued to him, and shall be equally liable in all respects for neglect of duty; and if the sheriff be a party, the coroner shall be bound to perform the service, as he is now bound to execute

In the present case, there is no dispute that service was attempted on the deputies by another deputy sheriff rather than the coroner of Richmond County, the clerk of court, or a person designated by the clerk of court. The deputies argue that such service is not valid under N.C. Gen.Stat. § 162–16 because, as deputies, they are the alter egos of the sheriff. *Blake v. Allen,* 221 N.C. 445, 20 S.E.2d 552, 554 (1942) (deputy is alter ego of the sheriff and they are one person under the law); *State ex rel. Cain v. Corbett,* 235 N.C. at 38, 69 S.E.2d at 23 (same). They claim that the statute does not allow the sheriff to serve himself and that one deputy serving another is equivalent to the sheriff serving himself. The Court does not disagree with defendants' ultimate conclusion, but begins from a broader, more basic premise.

The plain language of N.C. Gen. Stat § 162–16 states that in cases such as the one at bar, where the sheriff is a party to the action, service must be performed by the coroner, clerk, etc. The North Carolina Supreme Court explained long ago that the purpose of this statute was to prevent service of process by a person with a conflict of interest. *Evans v. Etheridge,* 96 N.C. 42, 1 S.E. 633 (1887)(dicta). Following this rationale, it found a few years later that the coroner was the proper person to serve not only the sheriff, but also codefendants in cases where the sheriff was the party. *State ex rel. Battle v. Baird,* 118 N.C. 854, 24 S.E. 668 (1896).

These cases make clear that North Carolina has sought to protect the integrity and reputation of the judiciary's official process server and writ executioner by eliminating the appearance of impropriety whenever the sheriff is an interested party in the litigation.

In *Evans,* 96 N.C. 42, 1 S.E. 633, the court contrasted the situation between the sheriff and the clerk of court. It found that the clerk of court could issue a summons even though the clerk was a party in the litigation. It reasoned first that the act of issuing a summons was a ministerial and not a judicial act. It expressed concern that, unlike the sheriff, the legislature had not provided for an alternative procedure which would mean that a contrary ruling would deny a clerk the ordinary rights of a litigant. And, perhaps most importantly, the clerk was directly subject to the supervision of the court.

Because the statute in question has the purpose of protecting against conflicts of interest and appearances of impropriety, that purpose could not be fulfilled unless it were extended to the sheriff's deputies as well. North Carolina law holds the sheriff responsible for the acts of the deputy. *Messick v. Catawba County, North Carolina,* 110 N.C.App. 707, 431 S.E.2d 489. Therefore, in cases such as this where a deputy is being sued on account of actions which arguably fall within the alleged scope of his duties for which the Sheriff himself may be held liable, the Sheriff clearly has an interest in the litigation which bars the Sheriff from serving process.[7] Because the Sheriff's deputies act as his agents, they cannot serve process on anyone in a case such as this where the Sheriff is an interested party. Therefore, service on the parties, including defendant deputies Thorpe and Harrelson, had to be pursuant to N.C. Gen.Stat. § 162–16. It was not. For these reasons, the Court grants the deputies' motion to dismiss for failure of service of process, but the dismissal is without prejudice to plaintiff reserving the complaint.

process where the sheriff is a party; and this Chapter relating to sheriffs shall apply to coroners when the sheriff is a party. Sheriffs and coroners may return process by mail. Their liabilities in respect to the execution of process shall be as prescribed by law.

In those counties where the office of coroner has been abolished, or is vacant, and in which process is required to be served or executed on the sheriff, the authority to serve or execute such process shall be vested in the clerk of court; however, the clerk of court is hereby empowered to designate and direct by appro-

priate order some person to act in his stead to serve or execute the same.

7. The holding today does not implicate a question of whether N.C. Gen.Stat. § 162–16 would bar the sheriff or other deputies from serving process in a situation where the deputy is either a plaintiff or a defendant in an action with respect to matters which had no relation whatsoever either to the deputy's employment with the sheriff or to actions purportedly taken pursuant to his or her position as a deputy.

**IT IS THEREFORE ORDERED** that defendant Richmond County's motion to dismiss (docket no. 3) is granted.

**IT IS FURTHER ORDERED** that defendants Thorpe and Harrelson's motion to dismiss (docket no. 3) is granted, and that the claims against them be, and hereby are, dismissed without prejudice.